IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| JALEON KELLY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 3:18-cv-149-WKW-GMB |
| | ) | [WO] |
| WAL-MART STORES EAST, LP, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

Pursuant to 28 U.S.C. § 636(b)(1) this case was referred to a United States Magistrate Judge for review and submission of a report with recommended findings of fact and conclusions of law. Doc. 6.  Pending before the court are two motions to dismiss filed by Defendant Wal-Mart Stores East, LP ("Wal-Mart").  The court interprets Plaintiff Jaleon Kelly's complaint as setting forth claims of disparate treatment, failure to promote, failure to hire, lack of reasonable accommodation, and a hostile work environment under the Americans with Disabilities Act ("ADA"). Doc. 26.  In light of Kelly's intervening Second Amended Complaint (Doc. 26), the court RECOMMENDS that the Motion to Dismiss (Doc. 18) directed to the First Amended Complaint be DENIED as moot.  For the reasons that follow, the undersigned RECOMMENDS that the Motion to Dismiss (Doc. 27) directed to the Second Amended Complaint be GRANTED in part and DENIED in part.

## I.  JURISDICTION AND VENUE

The court has subject matter jurisdiction over the claims in this lawsuit pursuant to 28 U.S.C. § 1331.  The parties do not contest personal jurisdiction or that venue is proper

in the Middle District of Alabama.  The court finds adequate allegations to support both.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

The facts alleged in the Second Amended Complaint follow.  Kelly has been diagnosed with (1) mixed receptive-expressive language disorder, (2) the learning disorder NOS (relating to slow processing speed), (3) developmental coordination disorder, (4) attention deficit/hyperactivity disorder, and (4) the features of anxiety and sadness. Doc. 26 at 3.  Kelly's disabilities significantly affect his ability to process information, and he needs repetition of instructions or lists to ensure proper understanding. Doc. 26 at 3.  The disabilities also significantly impact his social interactions, particularly with those he does not know, by limiting his ability to initiate conversations, maintain eye contact, and smile. Doc. 26 at 3.  For example, the learning disorder NOS leaves Kelly "verbally overmatched" in conversations with individuals who do not have a disability. Doc. 26 at 3.

In February 2017, Wal-Mart hired Kelly in a "Happy to Help" position to assist customers with finding items following a remodeling of its store in Alexander City, Alabama. Doc. 26 at 4–5.  Kelly was employed from February 2, 2017 until February 22, 2017. Doc. 25 at 5.  Instead of, and in addition to, his duties to assist customers, Kelly was assigned other tasks to be completed simultaneously. Doc. 26 at 5.  Kelly was tasked with completing as many as five items at once, which overwhelmed him. Doc. 26 at 5.  Though willing and able to perform all tasks given to him, Kelly needed reasonable accommodations relating to how and when the tasks were assigned. Doc. 26 at 5.

Accordingly, Kelly informed Department Manager Michelle Ross and Store Manager Chad Quick that he was unable to perform all of the tasks at once. Doc. 26 at 5.

He suggested that he be assigned only two tasks at a time. Doc. 26 at 5.  And he specifically requested that he be allowed to use a scanner to improve his "zoning"[1] speed in the toy aisle. Doc. 26 at 5.  Quick denied this request without explanation. Doc. 26 at 5.  When Kelly attempted to explain his disabilities to Ross, she simply threw her hands up as if to say, "I don't want to hear it," or "Don't talk to me," and would walk away. Doc. 26 at 4.

Around February 13, 2017, Ross scolded and berated Kelly for not finishing his assigned tasks quickly. Doc. 26 at 5–6.  She called Kelly into the back room and verbally scolded him. Doc. 26 at 6.  She also scolded him in front of the customers and other employees in order to humiliate him. Doc. 26 at 6.  Ross exhibited similar behavior throughout Kelly's time at Wal-Mart. Doc. 26 at 6.

Quick also verbally harassed Kelly around February 22, 2017. Doc. 26 at 6.  He humiliated him for his learning disabilities. Doc. 26 at 7.  Instead of speaking to Kelly like an adult, he talked down to him and told him to "smile like Mickey Mouse." Doc. 26 at 7.  Quick never asked the same of Kelly's coworkers, and never publicly humiliated them as he did Kelly. Doc. 26 at 7.

On several occasions, Wal-Mart intentionally treated Kelly differently from his co-workers. Doc. 26 at 7.  For example, he was not allowed to use a handheld scanner to assist in his zoning of the toy aisle even though other employees were given scanners. Doc. 26 at 7.

Because of his learning disabilities, Kelly was passed over for promotion. Doc. 26

---

[1] Zoning requires employees to put items that are out of place onto the correct shelf. Doc. 26 at 7.  The scanner indicates the correct placement of an item. Doc. 26 at 7.

3

at 6.  Citing to his three years of qualifying experience using a cash register at another job, Kelly requested a promotion to a cash register position, but his request was denied. Doc. 26 at 6 & 7–8.  He also applied for other positions at Wal-Mart but was denied due to his learning disabilities. Doc. 26 at 6.  Throughout his tenure, Kelly asked to be reassigned to a cash register position, but Wal-Mart refused to consider him for promotion or reassignment. Doc. 26 at 7–8.

Quick and another store manager acknowledged that they were aware of Kelly's disabilities. Doc. 26 at 4.  They knew that he had trouble understanding instructions and organizing his work tasks. Doc. 26 at 4.  The other store manager admitted that his own daughter had similar cognitive and learning disabilities and that he recognized them in Kelly during the "Happy to Help" interview process. Doc. 26 at 4.

When Kelly returned from his lunch break on or about February 22, 2017, Ross and Quick called him into the office and terminated his employment. Doc. 26 at 8.  Kelly was terminated without consideration of his learning disabilities and without regard for his requests for reasonable accommodation. Doc. 26 at 8.  Instead, Ross and Quick purposefully assigned Kelly tasks that they knew he could not complete and that were not within his job description, and then terminated him because he could not complete these tasks. Doc. 26 at 8.  Kelly was willing and able to perform all tasks given to him, either with or without reasonable accommodation for his disabilities. Doc. 26 at 8.

Kelly subsequently applied for six cashier positions advertised by Wal-Mart, but Wal-Mart never interviewed him or called him about those jobs. Doc. 26 at 8.  Wal-Mart filled one of the six advertised positions with a current employee, while the other five

positions remained open. Doc. 26 at 8.

On July 9, 2017, Kelly filed a charge with the EEOC regarding Wal-Mart's discriminatory conduct. Doc. 26 at 9.  Kelly's charge indicated that the discrimination was based on disability. Doc. 1-1.  His fact statement, in its entirety, is as follows:

> I am an individual with a disability. I was hired by the above-named employer on or around February 2, 2017 in a "happy to help" position.  On February 13, 2017, the Department Manager Michelle (LNU), talked to me about not performing my job right.  I spoke with the Store Manager Chad (LNU) and asked him if I could be placed on a register because I have three years of previous experience.  However, Chad (LNU) did not reassign me.  On February 22, 2017, I was discharged by Chad (LNU) for not smiling like "mickey mouse" and for not smiling at every customer.
>
> I believe that I have been discriminated against because of my disability, in violation of the Americans with Disabilities Act of 1990, as amended.

Doc. 1-1.

Kelly asserts claims for failure to promote, failure to hire, and failure to provide reasonable accommodation (Doc. 26 at 11), and appears also to claim hostile work environment and disparate impact. Doc. 26 at 5–6.

### III.  STANDARD OF REVIEW

In considering a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court must "take the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  To survive a motion to dismiss, a complaint must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A claim is "plausible on its face" if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the

defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Factual allegations need not be detailed, but "must be enough to raise a right to relief above the speculative level," *Twombly*, 550 U.S. at 555, and "unadorned, the-defendant-unlawfully-harmed-me accusation[s]" will not suffice. *Iqbal*, 556 U.S. at 678.

## IV. DISCUSSION

"Under the ADA, an employer may not discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1365 (11th Cir. 2000) (citing *Hillburn v. Murata Elec. N. Am., Inc.*, 181 F.3d 1220, 1226 (11th Cir. 1999)) (internal quotation marks omitted). To establish a claim of discrimination under the ADA, a plaintiff must demonstrate that (1) he is disabled, (2) he is a qualified individual, and (3) he was discriminated against because of his disability. *Holly v. Clairson Indus., L.L.C.*, 492 F.3d 1247, 1255–56 (11th Cir. 2007). Here, Kelly brings ADA discrimination claims of disparate treatment, failure to promote, the failure to hire, reasonable accommodation, and hostile work environment. Wal-Mart argues that Kelly's ADA claims should be dismissed because (1) he failed to exhaust his administrative remedies as to the reasonable accommodation, failure to hire, and hostile work environment claims; and (2) he does not state a plausible claim for relief as to any claim.

Wal-Mart moves this court to dismiss Kelly's complaint pursuant to Rules 8(a) and 10(b).  Rule 8 of the Federal Rules of Civil Procedure requires a complaint to contain a short and plain statement showing that the plaintiff is entitled to relief. Fed. R. Civ. P. 8(a)(2).  The allegations should be "simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). Each claim should be stated in separate, numbered paragraphs, "limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).  This enables the opposing party to respond adequately and appropriately to the claims against it, and allows the court to "determine which facts support which claims and whether the plaintiff has stated any claims upon which relief can be granted." *Weiland v. Palm Beach Cty. Sherriff's Office*, 792 F.3d 1313, 1320 (internal citations omitted).  But while *pro se* litigants must comply with the Federal Rules of Civil Procedure, *Giles v. Wal-Mart Distrib. Ctr.*, 359 F. App'x 91, 93 (11th Cir. 2009), *pro se* pleadings are held to a less strict standard than those prepared by attorneys and "are thus construed liberally." *Alba v. Montford*, 517 F.3d 1249, 1252 (11th Cir. 2008).  The court, mindful of Kelly's *pro se* status, has attempted to identify and address any cognizable claims.

## A.    Exhaustion of Administrative Remedies

### 1.    Reasonable Accommodation Claim

The court finds that Kelly exhausted his administrative remedies as to his reasonable accommodation claim.  The ADA bars discrimination against a qualified individual who can perform the essential functions of his job. *D'Angelo v. ConAgra Foods, Inc.*, 422 F.3d 1220, 1235 (11th Cir. 2005).  A qualified individual within the meaning of the ADA is one who can perform the essential functions of his job with or without reasonable

accommodation. *Holly*, 492 F.3d at 1256.  "An accommodation is only reasonable if it allows the disabled employee to perform the essential functions of the job in question."  If, even with accommodation, Kelly is unable to perform the essential functions of his job, "he is, by definition, not a qualified individual, and therefore, not covered under the ADA." *Holly*, 492 F.3d at 1256.

But before a plaintiff can litigate a claim for discrimination under the ADA, he must exhaust his administrative remedies. *See Rizo v. Ala. Dep't of Human Res.*, 228 F. App'x 832, 835 (11th Cir. 2007) (citing *Wilkerson v. Grinnell Corp.*, 270 F.3d 1314, 1314 (11th Cir. 2001)).  This begins with the filing of a charge of discrimination with the EEOC within 180 days of the last act of discriminatory treatment. *Id.*  After a plaintiff files a charge of discrimination, the EEOC investigates the claims and, in certain instances, issues a notice of dismissal and right to sue. *See* 42 U.S.C § 2000e-5(f)(1); *Barclay v. First Nat. Bank of Talladega*, 2014 WL 5473829, at *6 (N.D. Ala. Oct. 28, 2018).  A plaintiff must then file his judicial complaint within 90 days of receiving a right-to-sue letter from the EEOC. *Barclay*, 2018 WL 5473829, at *6.

Generally, "[a] plaintiff's judicial complaint is limited by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination." *Muhall v. Advance Sec., Inc.*, 19 F.3d 586, 589 n.8 (11th Cir. 1994) (citing *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455 (5th Cir. 1970)).  "[A]llegations of new acts of discrimination are inappropriate." *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277, 1279–80 (11th Cir. 2004).  However, a plaintiff is free to allege in court not only the specific complaints made by the initial EEOC charge, but any discrimination related to the

charge's allegations. *See Freeman v. Koch Foods of Alabama*, 777 F. Supp. 2d 1264, 1276 (M.D. Ala. March 21, 2011) (citing *Chanda v. Engelhard/ICC*, 234 F.3d 1219, 1225 (11th Cir. 2000)).   And a judicial complaint can include "any allegation investigated by the EEOC, even if the investigation was broader than the EEOC charge triggering the investigation." *Scott v. Shoe Show, Inc.*, 38 F. Supp. 3d 1343, 1356 (N.D. Ga. 2014).  "The proper inquiry is whether the complaint is like or related to, or grew out of, the allegations contained in the relevant charge." *Kelly v. Dun & Bradstreet, Inc.*, 557 F. App'x 896, 899 (11th Cir. 2014) (citing *Gregory*, 355 F.3d at 1280).  "[C]ourts do not strictly interpret the scope of the EEOC charge itself because charging parties often prepare EEOC charges by workers who lack education or sophistication without the assistance of counsel." *Freeman*, 777 F. Supp. 2d at 1276 (internal citations and quotation marks omitted).

Here, Wal-Mart argues that Kelly's claim for reasonable accommodation must be dismissed for his failure to exhaust his administrative remedies because "[n]othing in the Charge would have placed the EEOC on notice that Plaintiff needed an accommodation to perform his 'Happy to Help' job." Doc. 27 at 10–11.  Specifically, Wal-Mart asserts that facts related to a request for accommodation, difficulties performing tasks, or the handheld scanner do not appear in Kelly's charge. Doc. 27 at 11.  Instead, Wal-Mart proposes that Kelly's charge placed the EEOC on notice only of a failure to promote claim and unlawful termination claim. Doc. 27 at 14.

To support this argument, Wal-Mart cites to *Hamar v. Ashland, Incorporated*, 211 F. App'x 309, 310 (5th Cir. 2006).  *Hamar*, which is not binding on this court, is readily distinguishable from this case.  The plaintiff in *Hamar* included only the following in his

EEOC charge: "I believe that I have been discriminated against in that I have been perceived as having a disability in violation of the Americans with Disabilities Act of 1990." *Id.*  Affirming the lower court, the Fifth Circuit upheld the dismissal of the plaintiff's reasonable accommodation claim, finding that the scope of the charge was too narrow to have exhausted this claim. *Id.*

Kelly's EEOC charge is much broader in scope.  In addition to stating that he believed he was discriminated against because of his disability, Kelly included the factual allegations that the Department Manager talked to him about not performing his job correctly on February 13, 2017; that he asked to be assigned to a register and was denied; and that he was discharged for not smiling like Mickey Mouse. Doc. 1-1 at 2.  Though Kelly did not explicitly use the words "reasonable accommodation," an investigation into a request for accommodation can reasonably be expected to grow from the facts included in the charge. *See Muhall*, 19 F.3d at 589.  For example, when investigating the February 13th conversation, it is likely that the EEOC would have uncovered Kelly's attempt to explain his disabilities to Ross and his request to be assigned fewer tasks at one time. Doc. 26 at 6.  And when looking into Kelly's request to be placed on a cash register, it is reasonable to expect that the EEOC would have discovered that Kelly was attempting to initiate a conversation about accommodations. Doc. 29 at 3.  Therefore, while Kelly's charge may not specifically mention the words "accommodation," "task," or "scanner," the reasonable accommodation claim brought in his judicial complaint is properly tailored to the scope of the EEOC investigation which could reasonably be expected to grow out of his charge of discrimination. *See Gregory*, 355 F.3d at 1280.

### 2. *Failure to Hire Claim*

Kelly also exhausted his administrative remedies as to his failure to hire claim. Wal-Mart contends that Kelly's charge does not include any facts that would alert the EEOC to investigate Kelly's post-termination applications for cashier positions because his charge mentions only that he requested to be moved to a cash register during his employment. Doc. 27 at 15. And Wal-Mart claims that the charge does not allege that it failed to hire Kelly into any position. Doc. 27 at 15.

"Additional judicial claims are allowed if they amplify, clarify, or more clearly focus the allegations in the EEOC complaint, but allegations of new acts of discrimination are inappropriate." *Robinson v. Koch Foods of Ala.*, 2014 WL 4472611, at *2 (M.D. Ala. Sept. 11, 2014) (citing *Gregory*, 355 F.3d 1277, 1279–89). But, as discussed above, judicial relief may be sought for incidents not listed in an original charge to the EEOC if the incidents are within the scope of the charge, meaning that the incident is (1) like or reasonably related to the allegations contained in the charge, or (2) could reasonably be expected to grow out of the investigation of the pending EEOC charge. *Browning v. AT&T Paradyne Corp.*, 838 F. Supp. 1568, 1572 (M.D. Fla. 1993).

Here, the scope of the EEOC investigation would have included Kelly's attempts to be placed on a cash register, as his charge explicitly states that he asked to be reassigned to a register. Doc. 1-1 at 2 ("I spoke with the Store Manager Chad (LNU) and asked him if I could be placed on a register because I have three years of previous experience. However, Chad (LNU) did not reassign me."). Similar post-termination applications for the same type of position could reasonably be expected to grow out of the investigation of the

pending EEOC charge because these applications are similar in character to Kelly's allegation that he was denied reassignment to a cash register and would have been discovered during a meaningful investigation of the allegation that does appear in Kelly's EEOC charge.   Therefore, Kelly adequately exhausted his administrative remedies with respect to his failure to hire claim.

### 3.     *Hostile Work Environment Claim*

Kelly has not exhausted his administrative remedies for any hostile work environment claim.   While the Eleventh Circuit has not explicitly recognized a hostile work environment claim under the ADA, "several other circuits have concluded that the ADA provides a cognizable claim for a disability-based hostile work environment." *Cooper v. CLP Corp.*, 679 F. App'x 851, 853 n.2 (11th Cir. 2017).   And several district courts within the circuit have assumed this claim exists. *See Shaling v. UPS Ground Freight*, 202 F. Supp. 3d 1283, 1290–91 (N.D. Ala. 2016) (recognizing an ADA hostile work environment claim and finding that the "language of Title VII and the ADA match closely"); *Williamson v. Int'l Paper Co.*, 85 F. Supp. 2d 1184, n.3 (S.D. Ala. 2000) (noting that "several [courts] have assumed that such an ADA hostile work environment claim is actionable in order to rule on the cases before them and have analyzed the claims under the same scheme used in Title VII hostile work environment claims"); *Mont-Ros v. City of W. Miami*, 111 F. Supp. 2d 1338, 1362 (S.D. Fla. 2000) ("Disability-based hostile environment claims are analyzed under the Title VII standards for hostile work environment claims."); *Schwertfager v. City of Boynton Beach*, 42 F. Supp. 2d 1347, 1365–67 (S.D. Fla. 1999) ("Following the practice of other district courts, the Southern District of Florida has, likewise, presumed the

existence of an ADA hostile environment claim."); *Edmonds v. Southwire Co.*, 58 F. Supp. 3d 1347, 1354 (N.D. Ga. 2014) (assuming "that hostile work environment claims are cognizable under the ADA" in order to decide plaintiff's claims); *Alpert v. DeKalb Office Env., Inc.*, 206 F. Supp. 2d 1280, 1287 (N.D. Ga. 2001) ("An ADA claim for hostile work environment is modeled after the similar claim under Title VII.") (internal citation and quotation omitted).  Neither party here contests that such a claim is cognizable.  The court will assume that the law allows for an ADA hostile work environment claims for purposes of this analysis.

Wal-Mart contends that any ADA hostile work environment claim must fail because Kelly did not exhaust his administrative remedies and because he has not pleaded that the harassment he suffered was sufficiently severe or pervasive. Doc. 27 at 24–26.  Kelly argues that he exhausted his administrative remedies by communicating to the EEOC the harassment that he endured. Doc. 29 at 9.  Kelly also proposes that the severity of harassment is a subjective matter for the jury. Doc. 29 at 10.  "To prove a *prima facie* case of hostile work environment, a plaintiff must establish that: (1) he or she belonged to a protected group, (2) he or she was subjected to unwelcome harassment, (3) the harassment was based on a protected characteristic, [and] (4) the harassment was sufficiently severe or pervasive to alter the terms and conditions of his or her employment and create an abusive work environment." *Trask v. Sec'y, Dep't of Vet. Affairs*, 822 F.3d 1179, 1195 (11th Cir. 2016).[2]

---

[2] "Disability-based hostile environment claims are analyzed under the Title VII standards for hostile work environment claims." *Schwertfager*, 42 F. Supp. 2d at 1365–67.

To support the argument that he exhausted his administrative remedies, Kelly submitted email correspondence between his mother, Belinda Webb, and an EEOC investigator, Serena Curry. Doc. 32-4.   In the email, Webb alleges that Wal-Mart employees and managers harassed Kelly because of his disability. Doc. 32-4.   Courts may consider documents attached to a motion to dismiss without converting the motion into one for summary judgment if the documentation (1) is central to the plaintiff's claim and (2) is undisputed. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).   But the Eleventh Circuit "cautions against consideration of information provided to the EEOC, which would not itself constitute a charge, as evidence of what would reasonably be expected to grow out of an investigation of the charges." *Ambus v. Autozoners, LLC*, 938 F. Supp. 2d 1225, 1233 (M.D. Ala. 2013) (citing *Green v. Elixir Indus., Inc.*, 152 F. App'x 838 (11th Cir. 2005)).   Furthermore, the purpose of the exhaustion requirement is "to put the charged party on notice of the claims raised against it." *Id.* at 1231 (citing *Sloop v. Mem'l Mission Hosp., Inc.*, 198 F.3d 147, 149 (4th Cir. 1999) (internal quotation marks omitted).

Wal-Mart indicated that it did not receive a copy of this email until it was submitted to the court, and thus did not have notice of the allegations within it. Doc. 34 at 6.   And, it was Kelly that submitted this documentation to the court at the court's direction.   The email was not attached to his complaint, nor did Wal-Mart attach it to the motion to dismiss. Consistent with the approach of its sister courts, it "appears to this court, therefore, that it should not consider the content of the separate letter in evaluating whether the EEOC charges were adequate to exhaust the hostile environment claim." *See id.* at 1230–31 (recognizing that this "is consistent with the practice of other courts which have reasoned

that letters to the EEOC cannot constructively amend a formal charge").  Accordingly, the court will determine whether Kelly exhausted his administrative remedies based on the allegations in the charge alone—and without consideration of the email purportedly sent by Kelly's mother.

The court cannot find that Kelly exhausted his administrative remedies for his hostile work environment claim.  *Green v. Elixir Industries, Incorporated*, 152 F. App'x 838 (M.D. Ga. 2012), an unpublished opinion, is instructive here.  The plaintiff's EEOC charge in *Green* stated:

> I. I was employed from March 7, 1995 until my discharge January 2, 2001. I was terminated for violation of the attendance policy, but I have no written warnings for attendance.  White males that have written warnings and have committed further violations were not terminated.
>
> II. Management stated I was discharged because of violation of the attendance policy.
>
> III. I believe that I have been discriminated against because of my race (black) in violation of Title VII of the Civil Rights Act of 1964, as amended.

*Id.* at 840.  The defendant in *Green* argued that a hostile work environment investigation could not reasonably be expected to grow out of this charge, and that the plaintiff thus failed to adequately exhaust his administrative remedies. *Id.*  The court agreed, noting that "all of the factual allegations contained in Green's EEOC charge relate[d] to his termination." *Id.*  The court further found that "[n]othing in Green's EEOC charge related to incidents of harassment, nor did anything mention the dates on which they occurred." *Id.* at 841.  Accordingly, the court held that "the facts alleged in Green's EEOC charge form cannot be said to encompass a hostile work environment claim." *Id.*

*Brown v. Mobile County Commissioners*, 2015 WL 1444965 (S.D. Ala. March 30, 2015) also is instructive.  Brown's EEOC charge detailed the following:

> I was hired on November 3, 2007, by the Respondent as an Auto Parts Buyer. On November 27, 2013, Theodore Lawson, Sr. (White, Superintendent of Public Works) terminated my employment.  I believe I was discriminated against because of my race (Black), sex and in retaliation for filing a grievance in December 2011.
>
> In April 2013, Eddie Rome (White, Auto Parts Buyer) purchased $5,000 $7,0000 [sic] worth of cleaning supplies from a vendor in exchange for staying at the vendor's beach property in Gulf Shores, Al.  Lawson suspended Rome for 10 days and did not terminate his employment.
>
> On November 6–7, 2013, I was accused of creating Mobile County purchase orders to vendors for items for personal vehicle totaling $314.25.  This is not true.  I was terminated.
>
> I believe I have been retaliated against in violation of Title VII of the Civil Rights Act of 1964, as amended.

*Id.* at *4.  The court found that Brown's hostile work environment claim did not "fall within the scope of the EEOC investigation which can be reasonably expected to grow out of the charge of discrimination." *Id.* (internal quotation and citation omitted).  The court reasoned that, in her charge, Brown "specifically referred to the incidents surrounding her termination, without any discussion of more general discrimination that could be construed as encompassing her . . . hostile work environment claim[]." *Id.*  The court ultimately held that Brown's hostile work environment claim was barred because her charge could not be expected to lead to an investigation of whether the defendant maintained a hostile work environment. *Id.*

Similarly, here, nothing in Kelly's charge clearly relates to harassment.  As in *Green*, where all of the factual allegations contained in the charge were directed towards

the plaintiff's termination, Kelly's charge only contains allegations about his termination and request to be reassigned to a cash register. Doc. 1-1.  As in *Green*, where the plaintiff's EEOC charge did not relate to incidents of harassment or mention the dates on which the harassment occurred, Kelly's charge does not include the allegations he makes in this lawsuit about being berated or scolded, and does not mention the dates on which Ross or Quick harassed him. Doc. 26 at 5–7.  Although Kelly's charge mentions that he was discharged for not smiling like Mickey Mouse, the charge frames this as a reason for termination, not as harassment, much in the same way that the plaintiff in *Brown* refers to the incidents surrounding her termination without any discussion of the general conditions of employment that would support a hostile work environment claim.  Accordingly, as in *Green* and *Brown*, a hostile work environment claim does not fall within the scope of an EEOC investigation that can reasonably be expected to grow out of Kelly's charge.  Thus, he has not adequately exhausted his administrative remedies as to his hostile work environment claim, and this claim is due for dismissal.

**B.    Plausibility of Claims**

While acknowledging that a plaintiff is not required to make out a *prima facie* case of discrimination to survive a motion to dismiss, Wal-Mart urges the court to use the *prima facie* elements of an ADA claim in order to determine whether Kelly has met the heightened pleading standards of *Twombly* and *Iqbal*. Doc. 27 at 16.  To make out this *prima facie* case of discrimination, Kelly must show that he (1) is disabled; (2) is a qualified individual, meaning that he can perform the essential functions of his job with or without reasonable accommodation; and (3) that he was discriminated against because of his

disability. *Holly*, 492 F.3d at 1255–56.  To establish a *prima facie* case of discrimination under the ADA, a plaintiff must show that he suffered an adverse employment action because of his disability. *West v. Town of Jupiter Island*, 146 F. Supp. 2d 1293, 1298 (S.D. Fla. 2000).   Kelly has alleged sufficient detail regarding his discrimination claims to survive Wal-Mart's motion to dismiss.

As a threshold matter, Kelly adequately pleaded that he can perform the essential functions of the "Happy to Help" job.  "Essential functions are the fundamental job duties of a position that an individual with a disability is actually required to perform." *Earl*, 207 F.3d at 1365 (internal citation and quotation marks omitted).   Wal-Mart suggests that Kelly's disabilities prevented him from performing the essential functions of his job. Doc. 27 at 18.  Wal-Mart also claims that Kelly failed to plead that any accommodation would have allowed him to perform the essential social function of the "Happy to Help" position. Doc. 27 at 19.  Urging the court to use "common sense," Wal-Mart argues that it can be derived that "smiling and communicating with strangers was an essential function" of the "Happy to Help" job. Doc. 27 at 18.  Wal-Mart avers that no accommodation would have enabled Kelly to perform this essential function or "rectified his admitted impairment in communicating with and smiling at customers." Doc. 27 at 18–19.

But on a 12(b)(6) motion, the court accepts a plaintiff's allegations as true, and Kelly pleaded that he was "willing and able to perform all tasks given to him" with reasonable accommodation "in how and when the tasks were given." Doc. 26 at 4.  While admitting that his disabilities cause significant social limitations, Kelly does not concede that he was unable to perform the essential functions of the job for which he was hired.  Moreover,

Kelly alleges that the tasks he was unable to perform were those that fell outside of the job's essential duties. Doc. 26 at 18 ("Manager Quick and Department Manager Ross purposely and intentionally set up Plaintiff with tasks that they knew he could not complete and were not part of his job in a 'Happy to Help' position and then terminated his employment because of it."). Accordingly, the court finds that Kelly plausibly pleaded that he was able to perform the essential functions of his job.

### 1. *Termination*

Kelly pleaded enough facts for this court to infer that he was terminated because of his disabilities and thus suffered an adverse employment action for purposes of an ADA discrimination claim. Alleging that Ross and Quick were not aware of Kelly's inability to smile and communicate with strangers, Wal-Mart contends that Kelly did not demonstrate that he was terminated because of his disability. Doc. 27 at 20. Wal-Mart reasons that he could not be fired for his social limitations if Quick and Ross were not aware of them. Doc. 27 at 20–21.

The court finds, however, that Kelly pleaded enough factual content to claim that Quick knew he was not able to smile and communicate with strangers. Kelly alleged that "Quick verbally harassed Plaintiff and humiliated him for his learning disabilities." Doc. 26 at 7. He further alleged that "[i]nstead of speaking to Plaintiff as an adult, Store Manager Quick talked down to Plaintiff by telling him to 'smile like Mickey Mouse' and speak to every customer." Doc. 26 at 7. Kelly pleaded that "Quick never asked Plaintiff's co-workers to do the same nor did he publicly humiliate co-workers as he did Plaintiff." Doc. 26 at 7. And Kelly's EEOC charge indicates that he was discharged for not smiling

like Mickey Mouse. Doc. 1-1 at 2.   While *Twombly* and *Iqbal* require that a complaint contain sufficient factual matter to raise a right to relief above the speculative level, these cases do "not suggest that the Supreme Court intended to rewrite Rule 12(b)(6) or abandon notice pleading," or to grant courts "the authority to divine what the plaintiff may plausibly be able to prove rather than accepting at the motion to dismiss stage that the plaintiff will be able to prove his allegations." *See Meyer v. Synders Lance, Inc.*, 2012 WL 6913724, at *1 (M.D. Ga. Dec. 12, 2012).   Kelly pleaded sufficient factual matter to back up his assertion that he was terminated because of his disabilities, and the court accepts his allegations as true.

### 2.   *Failure to Promote*

Furthermore, Kelly adequately alleged that he was not promoted to a cashier position because of his disability and thus suffered an adverse employment action.   Wal-Mart claims that Kelly failed to allege facts establishing that his non-assignment to the cash register was motivated by his disability, and that his conclusory allegations are speculative and fail to satisfy the pleading requirements. Doc. 27 at 22.   Specifically, Wal-Mart argues that Kelly "must plead more than that he applied for a job and was denied to state a discriminatory promotion claim." Doc. 27 at 22.

Kelly has, in fact, pleaded more than the failure to receive a promotion for which he applied.   He alleged that his three years of previous cash register experience made him qualified for the job. Doc. 26 at 8.   Nevertheless, he alleged that he never received an interview for the six cashier positions for which he applied. Doc. 26 at 8–9.   In addition, Kelly pleaded that Wal-Mart refused to consider him for promotion or reassignment despite

his qualifying experience and, as discussed above, that his supervisors did so with knowledge of his disability. Doc. 26 at 7 & 8.  Finally, Kelly pleaded that Wal-Mart chose to leave five positions open rather than hire him. Doc. 26 at 9.  This is sufficient factual matter to satisfy the pleading requirements and survive a motion to dismiss.

### 3.   *Disparate Treatment*

Kelly also has stated a claim that the denial of his request for a scanner was disparate treatment or grounds for a reasonable accommodation claim.  Wal-Mart contends that Kelly's "bare conclusion that his denial of use of a scanner at the time he asked for one must have been disability discrimination fails to meet the pleading standards of *Twombly/Iqbal* and must be dismissed." Doc. 27 at 24.  And Wal-Mart avers that the denial of a handheld scanner did not amount to an adverse employment action, as Kelly was terminated for failing to smile, not for working too slowly. Doc. 27 at 23.  In his response to the motion to dismiss, Kelly counters that he successfully pleaded that the denial of the scanner was disparate treatment and that his request to be reassigned to a register was an attempt to find a reasonable accommodation. Doc. 29 at 9.

Disparate treatment claims are cognizable under the ADA. *See Raytheon Co. v. Hernandez*, 540 U.S. 44, 53 (2003).  Employees can bring a disparate treatment claim by showing "that the employer treated certain employees worse than others because they possessed a protected trait." *Norris v. GKN Westland Aerospace, Inc.*, 921 F. Supp. 2d 1308, 1313 (M.D. Ala. 2013) (citing *Raytheon Co.*, 540 U.S at 52–53).  Liability depends upon whether the protected trait actually motivated the employer's decision. *Id.* (internal citation and quotation marks omitted).

Wal-Mart contends that Kelly failed to show that the denial of the scanner was related to his disability because he did not plead that his coworkers were similarly situated comparators. Doc. 27 at 23.  But Kelly pleaded that he was treated differently than other employees who were given the same task. Doc. 26 at 6.  He alleged that on several occasions he was purposefully treated differently from his co-workers, who were allowed to use a handheld scanner to assist in zoning. Doc. 26 at 6.  Kelly, on the other hand, was not permitted to use a scanner while zoning (Doc. 26 at 6), and then was terminated because he could not complete the tasks that fell outside of his "Happy to Help" duties. Doc. 26 at 18.  Given that Kelly alleged that he was treated differently than other employees assigned to the same "zoning" tasks and was terminated, the court finds that he has alleged enough to state a plausible disparate treatment claim.

### 4.     *Reasonable Accommodation*

Comparator evidence also is not a stumbling block to Kelly's reasonable accommodation claim.  "[A]n employer's failure to reasonably accommodate a disabled individual *itself* constitutes discrimination under the ADA, so long as that individual is 'otherwise qualified,' and unless the employer can show undue hardship." *Holly*, 492 F.3d at 1262.  There is no additional burden to demonstrate that the employer treats its non-disabled employees exactly the same as its disabled employees. *Id.*  "[T]he very purpose of reasonable accommodation laws is to require employers to treat disabled individuals differently in some circumstances—namely, when different treatment would allow a disabled individual to perform the essential functions of his position by accommodating his disability without posing an undue hardship on the employer." *Id.* at 1262–1263.  "By

definition any special 'accommodation' requires the employer to treat an employee with a disability differently, *i.e.*, preferentially." *U.S. Airways, Inc. v. Barnett*, 535 U.S. 391, 397 (2202).  Thus, to succeed on his reasonable accommodation claim, Kelly need not show that other similarly situated employees were allowed to use a scanner when he was not.  It is enough that he sought the use of a scanner as a reasonable accommodation, was denied, and then terminated.  He has alleged these facts, and therefore his claim survives a challenge under Rule 12(b)(6).

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that Motion to Dismiss for Failure to State a Claim (Doc. 27) be GRANTED as to Kelly's hostile work environment claim and DENIED as to his disparate treatment, failure to promote, failure to hire, and reasonable accommodation claims.

Also pending before the court is the previously filed Motion to Dismiss (Doc. 18). It is the RECOMMENDATION of the Magistrate Judge that the Motion to Dismiss (Doc. 18) be DENIED as moot.

It is further ORDERED that Defendant Wal-Mart is DIRECTED to file any objections to the report and recommendation **not later than February 5, 2019**.  Any objections filed must specifically identify the findings in the Magistrate Judge's report and recommendation to which the party is objecting.  Frivolous, conclusive, or general objections will not be considered by the District Court.  Wal-Mart is advised that this report and recommendation is not a final order of the court and, therefore, is not appealable.

Failure to file written objections to the proposed findings and recommendations in

the Magistrate Judge's report and recommendation shall bar the party from a *de novo* determination by the District Court of issues covered in the report and recommendation and shall bar the party from attacking on appeal factual findings in the report and recommendation accepted or adopted by the District Court, except upon grounds of plain error or manifest injustice. *See Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); *Stein v. Reynolds Sec., Inc.*, 667 F.2d 33 (11th Cir. 1982).

DONE this 22nd day of January, 2019.

GRAY M. BORDEN
UNITED STATES MAGISTRATE JUDGE